# EXHIBIT 3

## BERG AFFIRMATION

2022-44561 / Court: 215

CAUSE NO. _____________

| | | |
|---|---|---|
| TITAN COVERAGE PROTECTION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL INDIVIDUAL INSURANCE AGENCY, LLC, ASSOCIATION HEALTH CARE MANAGEMENT, INC., LANDON JORDAN AND RAMI HASSAN,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF<br><br><br><br>HARRIS COUNTY, TEXAS<br><br><br><br>_______ JUDICIAL DISTRICT |

**PLAINTIFF'S ORIGINAL PETITION**

COMES NOW, Titan Coverage Protection, LLC (hereinafter "Plaintiff" or "Titan"), complaining of National Individual Insurance Agency, LLC, Association Health Care Management, Inc., Landon Jordan and Rami Hassan (hereinafter, collectively, "Defendants").

## I. DISCOVERY CONTROL PLAN

1.1 The Plaintiff intends to conduct discovery in this case under a Level II Discovery Plan as provided by TEX. R. CIV. P. 190.3.

## II. PARTIES

2.1 Plaintiff is a domestic limited liability company authorized to do business in the State of Texas.

2.2 Defendant National Individual Insurance Agency, LLC ("Defendant NIIA" or "NIIA"), is a Texas corporation with its principal office at 3216 Friendly Lane, Haltom City, Texas 76117, Defendant NIIA may be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. **Issuance of citation is requested at this time.**

2.3 Defendant Association Health Care Management, Inc. ("Defendant AHCM" or "ACHM"), is a Texas corporation with its principal office at 11111 Richmond Avenue, Suite 200,

Houston, Texas 77082. Defendant AHCM may be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. **Issuance of citation is requested at this time.**

2.4 Defendant Landon Jordan ("Defendant Jordan") is a person residing in the State of Texas who may be served at (a) 11111 Richmond Avenue, Suite 200, Houston, Texas 77082, (b) 1409 Long & Winding Road, Mansfield, Texas 76063, and/or wherever he may be found. **Issuance of citation is requested at this time at both of the addresses, listed above.** Defendant Jordan is a vice principal, as defined under Texas law, of Defendant NIIA and/or ACHM.

2.5 Defendant Rami Hassan ("Defendant Hassan") is a person residing in the State of Texas who may be served at 11111 Richmond Avenue, Suite 200, Houston, Texas 77082, 6522 Providence River Lane, Katy, Texas 77493, and/or wherever he may be found. **Issuance of citation is requested at this time at both of addresses, listed above.** Defendant Hassan is a vice principal, as defined under Texas law, of Defendant NIIA and/or ACHM.

2.6 This case arises from Defendants' individual and collective businesses in the State of Texas, specifically its agreements with and representations to Plaintiff. Defendants have done and continue to do business in the State of Texas.

## III. JURISDICTION

3.1 In accordance with Texas Rule of Civil Procedure 47(b), Plaintiff states that the amount in controversy is within the jurisdictional limits of this court. In accordance with Texas Rule of Civil Procedure 47(c), Plaintiff states that it seeks monetary relief over $1,000,000.

3.2 All parties agreed the contract and associated services in the State of Texas and complied with all necessary legal requirements under Texas law.

## IV. VENUE

4.1 Venue in Harris County, Texas is proper pursuant to Texas Civil Practice and Remedies Code Section 15.002 (a)(1) because all or a substantial part of the acts or omissions giving rise to this lawsuit occurred in this county, including the location of the real property and services performed under the contract and stemming from the representations giving rise to the claims between Plaintiff and Defendants.

4.2 Venue in Harris County, Texas is required pursuant to Texas Civil Practice and Remedies Code Section 15.020 as the Producer Agreement, outlined below, maintains a forum selection clause containing mandatory venue in district court of Harris County, Texas and this is "major transaction," as defined by Texas law.

## V. INTRODUCTION

5.1 Defendants Jordan and Hassan approached Sean Callahan, owner of Plaintiff Titan Coverage Protection, LLC, to join their insurance marketing empire. Jordan and Hassan promised Titan access to premium insurance and insurance related products, cash advances, and to serve as a liaison to third-party funders, third-party administrators, and other independent entities. Titan would merely need to agree to serve as a subagent of Jordan's and Hassan's own insurance agency, the National Individual Insurance Agency, LLC ("NIIA"), allowing NIIA to receive a small override on Titan's commissions in exchange for NIIA's "marketing" services. Titan and NIIA papered their deal and, over the next several months, Titan spent millions of dollars marketing products offered by NIIA and acquiring thousands of new customers.

5.2 It turns out the Defendants were perpetrating a giant scam. Once Titan amassed a book of business worth millions in residual commissions, Titan started asking questions about accounting irregularities and regulatory issues associated with products offered through NIIA. Not

only did NIIA refuse to answer Titan's questions, Jordan and Hassan vindictively retaliated against Titan by completely cutting them off from the thousands of insurance customers procured by Titan and its individual agents.

5.3 Titan later learned that Jordan was not merely the owner of NIIA, but in control of Association Health Care Management, Inc. ("AHCM"), the third-party administrator that should have been (and be) independent of NIIA, Jordan's and Hassan's insurance agency. Upon information and belief, Jordan and Hassan are also in control of the applicable non-profit association, third-party funder, and other entities Jordan and Hassan led Titan to believe were independent of NIIA. Even worse, Titan later learned that NIIA and AHCM were mere continuations of a fraudulent scheme perpetuated by Jordan in the past: American Insurance Workers, Inc. ("AWIS"). And perhaps the most egregious element of Jordan's and Hassan's fraudulent empire is "Jericho Shares," an underhanded attempt to circumvent state insurance laws by purporting to sell unregulated shared health benefits under the guise of a church.

5.4 In sum, Jordan and Hassan induced Titan to pay for and amass a book of business worth millions knowing full well they never intended to allow Titan to realize the benefit of its hard work. Jordan, Hassan, and NIIA have also launched an unlawful campaign of insurance "twisting," specifically designed to convert Titan's existing customers into policies written by other insurance agents. Finally, these defendants have an engaged in an unlawful and actionable smear campaign designed to hamper Titan's ability to operate as an insurance agency independent of NIIA. Through this action, Titan seeks to hold Jordan, Hassan, and NIIA responsible for their unlawful actions. Titan also sues AHCM for an equitable accounting and civil conspiracy.

## VI. FACTUAL BACKGROUND

6.1 Plaintiff hereby adopts and incorporates paragraphs 1.1 – 5.4 of this Petition, as if fully set forth at this point, *verbatim*.

***Jordan and Hassan induce Titan to partner with NIIA***

6.2 On or about August 21, 2020, Sean Callahan ("Callahan") incorporated Titan Coverage Protection, LLC with the purpose of opening an insurance agency.

6.3 On September 2, 2020, Titan received its agency license in Florida and named Callahan as the agent in charge.

6.4 Between August and October 2020, Callahan met with several independent marketing organizations to determine who to partner with to enter the health insurance telemarketing space.

6.5 In or around late September 2020, Callahan spoke with Jordan and Hassan and discussed Titan serving as a subagency of NIIA. During those conversations, Jordan and Hassan – individually and on behalf of NIIA - made the following specific representations:

a. NIIA, Jordan and Hassan assured Callahan that if they partnered with them, Titan would be given access to an independent third-party service provider, independent third-party funding entity, and independent membership association.

b. NIIA, Jordan and Hassan assured Callahan that all products offered through, Jordan, Hassan, and NIIA were in strict compliance with all applicable state and federal regulations.

c. NIIA, Jordan and Hassan assured Titan that if it put in the work and spent the requisite money, Titan would make money in two ways. First, NIIA would secure advances on earned commissions from an independent third-party funder to help Titan fuel its growth. Second, once the third-party funder had its commission free advances returned, Titan would be entitled to keep commissions earned in

perpetuity for the life of the policy – known as "residual commissions." Without these dual revenue streams, the model was economically untenable.

d. NIIA, Jordan and Hassan assured Callahan that NIIA would serve as a fiduciary to protect Titan's economic interests. That, after all, was the reason why NIIA was set to receive an override on Titan's earned commissions.

e. Although NIIA typically required its subagents to sign non-compete agreements, NIIA, Jordan and Hassan agreed that Titan would be free to sell products on behalf of any carrier or independent marketing organization without any restrictive covenants applicable to Titan.

f. NIIA, Jordan and Hassan assured Callahan that any consumers secured by and written by Titan agents would remain customers of Titan.

g. NIIA, Jordan and Hassan assured Callahan that he would be able to tranche his book of business periodically.

6.6 Based on the foregoing material representations, On October 1, 2021, NIIA and Titan entered into a Producer Agreement (the "Producer Agreement" or "PA").[1] The Producer Agreement contained the following pertinent provisions:

a. NIIA was required to provide a functioning website to enable Titan to sell products offered through the platform. PA at § 1.1.

b. Titan had an absolute right to receive compensation for sales generated while the Producer Agreement was in effect, regardless of whether the Producer Agreement is ultimately terminated. *Id.* at § 3.2(b).

---

[1] The Producer Agreement is incorporated by reference into this Complaint but not attached in its entirety hereto because it contains commission schedules that could arguably be construed by one or more of the Defendants as confidential.

c. NIIA was unable to retroactively change any commission schedules. *Id.* at § 3.3(b).

d. NIIA was required to furnish "a statement of account on a monthly basis regarding compensation owed to [Titan] under [the Producer Agreement]." *Id.* at §§ 3.7 and 3.8.

e. The Producer Agreement is for a period of one (1) year with it automatically renewing in one-year increments unless properly terminated. *Id.* at § 4.1.

f. Any termination without cause must occur within sixty (60) days of an initial or renewal term. *Id.* at § 4.1.

g. NIIA has the right to terminate the Producer Agreement for cause "upon written notification being provided to [Titan] and a reasonable opportunity to cure." *Id.* at § 4.2.1.

6.7 Immediately after entering into the Producer Agreement, Titan started writing policies for NIIA.

***<u>Titan and NIIA begin business together</u>***

6.8 Shortly after NIIA and Titan entered into the Producer Agreement, Titan was a huge success. Within months Titan and its agents had written thousands of insurance policies and was immediately one of NIIA's most successful downline insurance agencies.

6.9 Although not expressly addressed in the Producer Agreement, once Titan was up and running, NIIA made clear that all customer service and compliance issues would be addressed through NIIA. While presented to Titan as a free service meant to take a burden away from Titan, in reality Jordan, Hassan, and NIIA created an atmosphere where NIIA was in complete control of Titan's customers and book of business. The red tape of this arrangement was suffocating for Titan, making it impossible for its team to effectively service its newly written customers.

6.10 Titan was also justifiably concerned over NIIA's handling of Titan's compliance issues as Titan learned (after executing the Producer Agreement) that NIIA was under investigation by several state insurance agencies for regulatory issues. Such disclosure all alleged impropriety was not made prior to entered into the Producer Agreement by NIIA, Jordan or Hassan to Titan. Any reasonable person would know, or should know, that such a disclosure would have impacted Titan's willingness to enter into such an agreement.

6.11 Recognizing these problems may be a larger issue, in late October of 2021, on behalf of Titan, Callahan flew to Las Vegas to meet with NIIA, Hassan and Jordan. Callahan raised his concerns regarding customer service and compliance-related issues. At this time, Jordan and Hassan confessed that NIIA was dealing with several regulatory issues, but assured Callahan that he and Titan had nothing to worry about and that everything was being taken care of to resolve the matters without incident, alteration of their arrangement, or penalty. Jordan and Hassan also assured Callahan that they (including NIIA) would prioritize Titan's customers for enhanced customer service to assuage any of his concerns.

6.12 Over the next few months Titan continued to be one of NIIA's most successful insurance agencies. Titan spent millions of dollars on acquiring health insurance leads to help grow its book of business. This expenditure was also an investment, as Plaintiff expected to reap the real, substantive return in the form of the residual commissions that would result under the represented model from Defendants.

6.13 The customer and compliance issues worsened, however, and Callahan continued to complain to NIIA, Jordan and Hassan that those issues need to be addressed. After the lucrative open enrollment period ended, Callahan also spoke with NIIA, Jordan and Hassan about tranching Titan's book of business. Between November 2021 and February 2022, NIIA, Jordan and Hassan

brushed off Titan's and Callahan's concerns – refusing to have any meaningful conversation about tranching.

6.14 In early February 2022, Callahan told Jordan and Hassan that the customer service, compliance, and tranching issues needed to be addressed immediately between Titan and NIIA. NIIA, Jordan and Hassan invited Callahan to join them for a weekend in Houston to discuss Titan's concerns. NIIA, Jordan and Hassan wined and dined Callahan, taking him out to dinner and a UFC Fight, but failed to meaningfully address Titan's concerns. Instead, NIIA, Jordan and Hassan used that weekend as an opportunity to pressure Callahan and Titan to peddle their newest venture: Jericho Share, a health care sharing ministry plan touted as a "Christian Ministry Plan" purportedly affiliated with a decades-old church.

***NIIA cuts of Titan***

6.15 After NIIA, Jordan and Hassan refused to address any of his concerns, Titan began demanding answers in March 2022. Rather than address any of Titan's concerns, NIIA, Jordan and Hassan increased their pressure for Titan to sell these purported health care ministry plans.

6.16 On April 5, 2022, without providing any written notice or explanation, NIIA, Jordan and Hassan abruptly cut off Titan's access to NIIA's platform. Titan asked NIIA, Hassan and Jordan for an explanation, but they refused to provide Titan any explanation. Titan asked NIIA, Hassan and Jordan about its entitlement to residuals for Titan's written book of business, but NIIA, Hassan and Jordan told Titan and Callahan that everything belongs to NIIA.

6.17 In early May 2022, counsel for Titan reached out to counsel for NIIA to obtain an explanation regarding the sudden termination and a status of accounts. During those conversations, NIIA's attorneys (who are deemed NIIA's agents, under Texas law) refused:

a. To identify any third-party administrator affiliated with NIIA;

b. To identify any third-party funder affiliated with NIIA;

c. To identify any membership association affiliated with NIIA;

d. To provide an accounting of Titan's book of business; or

e. To provide any meaningful information.

6.18 After several conversations, and at the request of NIIA's counsel, Titan's counsel sent a comprehensive list of twenty-seven (27) requests for information and documents. NIIA refused to provide a single document or piece of information.

6.19 Titan's counsel also requested to mediate their dispute with NIIA under the terms of the Producer Agreement, but that request was ignored.

6.20 Instead, on May 25, 2022, NIIA sent Titan's counsel a "draft termination for cause notice" (the "Draft Notice"). The Draft Notice was not sent to Titan in the manner prescribed by the Producer Agreement. The Draft Notice expressly provided that it would not provide Titan with any opportunity to cure any of the alleged actions complained about. The Draft Notice failed to provide any explanation as to why Titan was terminated on April 5, 2022, nearly two months before the Draft Notice was sent.

***Jordan, Hassan, and NIIA engage in unlawful acts to disparage and harm Titan***

6.21 Not only did Jordan and Hassan cause NIIA to unlawfully terminate their relationship with Titan, they also engaged in several unlawful acts in violation of Texas law.

6.22 First, Jordan, Hassan, and NIIA caused NIIA to breach its agreement with Titan. Not only has NIIA failed to perform its obligations under the Producer Agreement, NIIA has unilaterally terminated the Producer Agreement in a manner not provided for under that agreement (or Texas law); refused to provide an accounting; and has otherwise refused to perform under the agreement.

6.23 Second, Jordan, Hassan, and NIIA (through their network for entities and agents), began contacting Titan's customers under the guise of a compliance audit from a quasi-governmental entity. Specifically, Jordan, Hassan, and NIIA (acting as a quasi-governmental agency) would inform Titan's customers that there was a problem with their insurance policy and invite the customer to make a complaint. Once the "intake" was complete, the "auditor" would invite the customer to obtain a new policy that is unaffiliated with Titan and its insurance agents. This is unlawful, deceptive, and tortious interference.

6.24 Third, Jordan, Hassan, and NIIA have unlawfully disparaged Titan. Recognizing that Callahan and Titan are not bound by any restrictive covenant, Jordan, Hassan, and NIIA have engaged in a comprehensive and vindictive smear campaign designed to not only induce Titan's insurance agents to leave Titan, but to discourage any prospective agents from joining Titan. The representations advanced by Jordan, Hassan, and NIIA include, but are not limited to the following:

a. Titan is a criminal enterprise and its owner, Callahan, is going to prison.

b. Titan stole five million dollars from NIIA and has stolen money from others;

c. Titan and its ownership are liars and criminals that should not be trusted; and

d. NIIA owns all of Titan's customers and Titan has agreed because Titan admitted to violating the law.

## VII. CAUSES OF ACTION

### A. COMMON LAW FRAUD, FRAUD BY NON-DISCLOSURE AND FRAUDULENT INDUCEMENT

7.1 Plaintiff hereby adopts and incorporates paragraphs 1.1 – 6.24 of this Petition, as if fully set forth at this point, *verbatim*.

7.2 Plaintiffs would show the conduct of the Defendants NIIA, Jordan and Hassan constitutes the commission of and a conspiracy to commit common law fraud, fraud by non-disclosure, and fraudulent inducement to contract under Texas law.

7.3 Defendants NIIA, Jordan and Hassan made the foregoing representations identified in this Petition in an effort to procure Plaintiff's agreement and execution of the Producer Agreement, as well as to have Plaintiff create revenue-generating accounts for the sole benefit of Defendant NIIA. Defendants NIIA, Jordan and Hassan represented that the information presented by them was truthful and accurate and could be reasonably relied upon by the Plaintiffs in deciding whether or not to enter into the transaction.

7.4 The representations made by Defendants NIIA, Jordan and Hassan were known to be highly material to the Plaintiff'' decision as to whether or not to enter into a business transaction with Defendant NIIA and to continue performance under the Producer Agreement. Specifically, Plaintiff's entered not only into the Producer Agreement but also invested specific and large amounts of assets and incurred liabilities based on the representations.

7.5 The representations made by Defendants NIIA, Jordan and Hassan were in fact false, in that Defendants NIIA, Jordan and Hassan intentionally misrepresented information provided to Plaintiffs and concealed the existence of alter egos, commingled entities, regulatory problems, and non-intention to pay or assign accounts. Had this information been disclosed, it would have materially altered the profitability of the model proposed to Plaintiff and Plaintiff would not have entered into the Producer Agreement, nor invested assets and incurred liabilities.

7.6 When Defendants NIIA, Jordan and Hassan made these representations in question, they either knew the representations were false or made the representations recklessly as a positive assertion and without knowledge of their truth.

7.7 When Defendants NIIA, Jordan and Hassan made the representation each actually intended or had reasonable basis to expect that the Plaintiff would act on the reliance of the representations. Specifically, Plaintiffs would show that both Defendants NIIA, Jordan and Hassan had information from which a reasonable person would conclude the result of substantial business loss would follow under their plan and scheme. Moreover, Defendants NIIA, Jordan and Hassan knew Plaintiff's reliance was especially likely and justifiable in the type of the transaction in which the Defendants NIIA, Jordan and Hassan were involved. Defendants NIIA, Jordan and Hassan knew or had reason to expect that Plaintiff would enter into Producer Agreement and perform under it, based on such false representations.

7.8 Plaintiff would show that they knew of the representations of the Defendants NIIA, Jordan and Hassan and acted on them by actually entering into and performing under the Producer Agreement based on the representations. Plaintiff was specifically induced by the representations of the Defendants NIIA, Jordan and Hassan to engage in such action. Further, Plaintiff believed the representations were true and acted on them, including reasonably and justifiably relying on such misrepresentations.

7.9 Plaintiffs would show that such false representations and fraud have caused the Plaintiffs significant damage as will hereinafter be alleged with particularity. Plaintiff further states such actions were intentionally or grossly negligent, entitling it to exemplary or punitive damages.

**B. BREACH OF CONTRACT AND TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTUAL RELATIONSHIPS**

7.10 Plaintiff hereby adopts and incorporates paragraphs 1.1 – 7.9 of this Petition, as if fully set forth at this point, *verbatim*.

7.11 Plaintiff would show that Defendant NIIA failed to substantially and materially perform as promised under the Producer Agreement when performance was due, resulting in breaches of the Producer Agreement. Defendants NIIA's breaches were substantial and material, including but not limited to non-payment, failure to account, failure to assign or transfer accounts, and terminating Plaintiff improperly and without justification.

7.12 Plaintiff properly and timely performed under the Producer Agreement.

7.13 Plaintiff now sues for total breach. Defendant NIIA has stated no valid basis upon which to delay or excuse performance. Defendant NIIA's breach(es) of contract(s) have proximately caused Plaintiff's injuries and damages, as are and will be alleged herein.

7.14 Plaintiff had multiple existing contacts with agents and consumer accounts that Defendants NIIA, Jordan and Hassan willfully and intentionally interfered with, as outlined above. The interference by Defendants NIIA, Jordan and Hassan proximately causes Plaintiff's injury and Plaintiff has suffered actual damages and loss of customer and agent contracts. Plaintiff further states such actions were intentionally or grossly negligent, entitling it to exemplary or punitive damages.

7.15 There was a reasonable probability that Plaintiff would have entered into business relationships with third party customers and agents. Defendants NIIA, Jordan and Hassan intentionally interfered with those prospective relationships, as outlined above, and that conduct was independently tortious and unlawful, as alleged. The interference proximately causes Plaintiff's injury and Plaintiff has suffered actual damages and loss of customer and agent contracts. Plaintiff further states such actions were intentionally or grossly negligent, entitling it to exemplary or punitive damages.

## C. VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICE ACT AND THE TEXAS INSURANCE CODE

7.16 Plaintiff hereby adopts and incorporates paragraphs 1.1 – 7.15 of this Petition, as if fully set forth at this point, *verbatim*.

7.17 Plaintiffs are "consumers" as they sought and acquired goods or services from Defendants NIIA, Jordan and Hassan.

7.18 Defendants NIIA, Jordan and Hassan are proper "persons" or defendants under the Texas Deceptive Trade Practices Act, who either used or employed false, misleading, deceptive or unconscionable acts or practices, or were directly connected with the transaction with Plaintiff. Defendant NIIA is vicariously liable for the actions of Defendants Jordan and Hassan, and Defendants Jordan and Hassan are individually liable.

7.19 Defendants NIIA, Jordan and Hassan committed multiple violations and wrongful acts under the Texas Deceptive Trade Practices Act and Texas Insurance Code, including the following:

(a) Making or committing, false, misleading or deceptive acts and/or practices, including but not limited to violations of Tex. Business & Commerce Code § 17.46(b) (1), (2), (3), (5), (7), (8), (9), (12), (20), and (24). Plaintiffs relied on such acts and/or practices to their detriment.

(b) Breach of contractual promises and warranties.

(c) Committing unconscionable act(s) in connection with regard to service, fees, accounts and dealings with Plaintiff

(d) Committed multiple violations and wrongful acts under the Texas Insurance Code, including Tex. Ins. Code § 541.051, 541.052, and 541.053.

7.20 Plaintiff will show that the violations and actions of Defendants NIIA, Jordan and Hassan were a producing and proximate cause of its damages.

7.21 Plaintiff will show that the violations and actions of Defendants NIIA, Jordan and Hassan were done intentionally or knowingly, entitling Plaintiff to treble damages.

7.22 Plaintiff will show that the violations and actions of Defendants NIIA, Jordan and Hassan entitle them to reasonable and necessary attorney's fees under the Texas Deceptive Trade Practices Act and Texas Insurance Code.

**D. BUSINESS DISPARAGEMENT**

7.23 Plaintiff hereby adopts and incorporates paragraphs 1.1 – 7.22 of this Petition, as if fully set forth at this point, *verbatim*.

7.23 Defendants NIIA, Jordan and Hassan published disparaging words and statements about Plaintiff and Plaintiff's economic interests, as outlined above, to third parties.

7.24 Defendants NIIA, Jordan and Hassan published disparaging words and statements were false.

7.25 Defendants NIIA, Jordan and Hassan published the words with malice and without privilege.

7.26 Defendants NIIA's, Jordan's and Hassan's publications causes Plaintiff special damages, including actual damages, loss of goodwill and loss of business reputation. Plaintiff further states such actions were intentionally or grossly negligent, entitling it to exemplary or punitive damages.

## E. Civil Conspiracy

7.27 Plaintiff hereby adopts and incorporates paragraphs 1.1 – 7.26 of this Petition, as if fully set forth at this point, *verbatim*.

7.28 Plaintiff would show that the Defendants, and each of them, constituted two or more persons who combined or agreed to commit illegal acts or agreed to accomplish an illegal result by the use of lawful acts in the particulars previously alleged. The Defendants had a meeting of the minds on the object of this course of action and committed one or more overt unlawful acts in the furtherance of such combination. Such conduct thereby constitutes a conspiracy by and between such Defendants to commit the torts previously described for which each Defendant is jointly and severally liable.

## F. Equitable Accounting and Constructive Trust

7.27 Plaintiff hereby adopts and incorporates paragraphs 1.1 – 7.29 of this Petition, as if fully set forth at this point, *verbatim*.

7.30 Plaintiff and Defendants maintained a fiduciary relationship as to funds owed and payable to Plaintiff and Defendants breached their fiduciary duty concerning such funds. Alternatively, Defendants committed actual fraud on Plaintiff or conspired to commit fraud.

7.31 Defendants have been unjustly enriched based on their conduct.

7.32 Moreover, the allocations of funds in the Defendants' possession involve facts and accounts that are complex, such that an adequate remedy at law may not be obtained without an accounting. Plaintiff has shown the Defendants liability in various causes of action, outlined above.

7.33 The funds owed to Plaintiff are traceable and in the possession of Defendants.

7.34 Plaintiff is entitled to an equitable accounting and constructive trust over funds currently in possession of Defendants under Texas law, and specifically the provisions of Tex. R. Civ. P. 172.

## VIII. DAMAGES AND EQUITABLE RELIEF

8.1 Plaintiff hereby adopts and incorporates paragraphs 1.1 – 7.34 of this Petition, as if fully set forth at this point, *verbatim*.

8.2 As a direct, but-for, and proximate result of Defendants' conduct, Plaintiff has suffered and seeks the following economic and reliance damages:

(a) Economic losses suffered by Plaintiff;

(b) Treble damages under the Texas Deceptive Trade Practices Act;

(c) Punitive or exemplary damages;

(d) All reasonable and necessary attorneys' fees;

(e) An accounting;

(e) Court costs; and

(f) Pre and post-judgment interest.

8.3 As a direct, but-for, and proximate result of Defendants' conduct, Plaintiff would seek the equitable relief of an accounting and/or constructive trust.

## IX. PRAYER AND REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein and that upon final trial Plaintiff have and recover all damages to which it is entitled, an accounting and/or constructive trust, all costs of court, pre-judgment and post-judgment interest at the highest rate provided by law, reasonable and necessary attorney's fees as allowed by law, and for such other and further relief, in law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully Submitted,

**AYRES LAW OFFICE, PC**

By: ___/s/ Christopher S. Ayres_________
Christopher S. Ayres
State Bar I.D. # 24036167
csayres@ayreslawoffice.com
8140 Walnut Hill Lane, Suite 830
Dallas, Texas 75231
972-991-2222 – Phone
972-386-0091 – Fax

**PADFIELD & STOUT, L.L.P.**

Mark W. Stout
State Bar I.D. #24008096
mstout@padfieldstout.com
Brandon J. Gibbons
State Bar I.D. #24082516
bgibbons@padfieldstout.com
420 Throckmorton Street, Suite 1210
Fort Worth, Texas 76102
817-338-1616 – Phone
817-338-1610 – Fax

**MARK MIGDAL & HAYDEN**

Yaniv Adar, Esq.
*(pro hac vice admission pending)*
Florida Bar No. 63804
yaniv@markmigdal.com
Brickell City Tower
80 SW 8th Street, Suite 1999
Miami, Florida 33130
305-374-0440 – Phone

**ATTORNEYS FOR PLAINTIFF**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Debbie Whatley on behalf of Christopher Ayres
Bar No. 24036167
dwhatley@ayreslawoffice.com
Envelope ID: 66662668
Status as of 7/26/2022 10:02 AM CST

Associated Case Party: TITAN COVERAGE PROTECTION, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Debbie Whatley | | filings@ayreslawoffice.com | 7/26/2022 9:39:33 AM | SENT |
| Viviana Vazquez | | vivi@markmigdal.com | 7/26/2022 9:39:33 AM | SENT |
| Mark Stout | | mstout@padfieldstout.com | 7/26/2022 9:39:33 AM | SENT |
| Yaniv Adar | | yaniv@markmigdal.com | 7/26/2022 9:39:33 AM | SENT |
| Christopher Ayres | | csayres@ayreslawoffice.com | 7/26/2022 9:39:33 AM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Debbie Whatley on behalf of Christopher Ayres
Bar No. 24036167
dwhatley@ayreslawoffice.com
Envelope ID: 66662668
Status as of 7/26/2022 10:02 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Vivan Vazquez | | vivi@markmigdal.com | 7/26/2022 9:39:33 AM | SENT |
| Mark Stout | | mstout@padfieldstout.com | 7/26/2022 9:39:33 AM | SENT |
| Yaniv Adar | | yaniv@markmigdal.com | 7/26/2022 9:39:33 AM | SENT |
| Christopher Ayres | | csayres@ayreslawoffice.com | 7/26/2022 9:39:33 AM | SENT |