UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ADVANCED PLUS LLC, ADVANCED
PLUS DEAL 1 LLC, ADVANCED PLUS
DEAL 2 LLC, and PACTOLUS INCOME
OPPORTUNITIES LLC,

                                      **MEMORANDUM AND ORDER**
                                      24-CV-8881-SJB-ARL

                Plaintiffs,

      -against-

LANDON JORDAN, NATIONAL
INDIVIDUAL INSURANCE AGENCY, LLC,
BLACKHAWK CLAIMS SERVICE, INC.,
RFA GROUP, INC., THE HEALTH SHARE
GROUP INC., ASSOCIATION HEALTH CARE
MANAGEMENT, INC., CRIMSON HOLDING
GROUP, INC., RIDGE ADMINISTRATIVE
SERVICES, INC., CHRISTOPHER JAMES
PAGNANELLI, ROY FRANKLIN ANDING, JR.,
RAMI HASSAN, DAVID KEELER,
and HAROLD L. BROCK, JR.

                Defendants.

-----------------------------------------------------------x
**BULSARA, United States District Judge:**

      Plaintiffs, a series of investment entities, allege they were the victims of a fraudulent insurance scheme and duped to advance insurance agent commissions to Defendants, who received profits they kept to themselves, to the tune of $22 million. (Compl. dated Dec. 28, 2024 ("Compl."), Dkt. No. 1 ¶¶ 1, 9).

      The Plaintiffs are Advanced Plus LLC, Advanced Plus Deal 1 LLC, Advanced Plus Deal 2 LLC, and Pactolus Income Opportunities LLC (collectively, "Plaintiffs"). The Defendants are both corporations: National Individual Insurance Agency, LLC,

Blackhawk Claims Service, Inc., RFA Group, Inc., The Health Share Group Inc., Association Health Care Management, Inc., Crimson Holding Group, Inc., Ridge Administrative Services, Inc., (collectively, the "Corporate Defendants"), and a number of individuals: Landon Jordan, Christopher James Pagnanelli, Roy Franklin Anding, Jr., Rami Hassan, David Keeler, and Harold L. Brock, Jr. (collectively, the "Individual Defendants").[1]  The Defendants, none of whom are citizens of New York, moved to dismiss the Complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). (Defs.' Mem. of Law in Supp. of Mot. to Dismiss dated Feb. 5, 2025 ("Defs.' Mem. of Law"), Dkt. No. 44 at 1–2).  For the reasons that follow, the Court concludes it lacks personal jurisdiction over each Defendant.  The Complaint is therefore dismissed without prejudice.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendants solicit funds from lenders to provide insurance agents with advances on their commissions.  (Compl. ¶ 46).  Because insurance agents typically do not receive commissions until policy holders pay premiums, Defendants' business helps lenders and companies solicit and retain agents.  (*Id.* ¶ 46).  On May 12, 2021, Plaintiffs Advanced Plus LLC ("AP") and Pactolus Income Opportunities LLC ("PIO") entered into an agreement under which PIO—a secured creditor—agreed to lend AP funds to support AP's business, which advanced insurance commissions.  (*Id.* ¶¶ 1, 61).

---

[1] Plaintiffs voluntarily dismissed claims against Defendants Strategic Partners LP and Mark Keck, because their presence in the case destroyed complete diversity.  (*See* Notice of Voluntary Dismissal dated Jan. 23, 2025, Dkt. No. 22; Order dated Jan. 28, 2025; Notice of Voluntary Dismissal dated Jan. 29, 2025, Dkt. No. 36).

Pursuant to that agreement, PIO lent AP $32 million, with a repayment maturity date of May 14, 2023.  (*Id.* ¶ 63).  AP defaulted on the loan in May 2023, claiming Defendants induced AP to spend all $32 million without repaying AP.  (*Id.* ¶¶ 64–65).  Following AP's default, PIO assumed power of attorney over AP, permitting PIO to sue to recover the $32 million debt.  (*Id.* ¶ 66).

On December 11, 2023, after several months of negotiations, Plaintiffs ceased funding Defendants' insurance streams because of Defendants' alleged refusal to provide proof of their ability to cover Plaintiffs' debts.  (Compl. ¶¶ 72–82).  The parties resumed negotiations in January 2024, after Defendants remitted three payments to Plaintiffs, culminating in Defendants' final payment in May 2024, and an in-person meeting in Dallas, Texas in July 2024.  (*Id.* ¶¶ 96–107).  At the meeting, the parties set deadlines for Defendants' new financial team to complete an internal audit, reconcile their books, and resume repayments to Plaintiffs.  (*Id.* ¶¶ 103–04, 107).  The deadlines were not met, (*id.* ¶ 108); the parties again attempted to resolve the matter in November 2024, (*id.* ¶ 109–10); and Plaintiffs commenced this lawsuit on December 28, 2024.

The lawsuit alleges Defendants engaged in a "pump and dump" scheme in which Defendants used Plaintiffs' (the lenders') funds to pay insurance agents; then stopped repaying Plaintiffs for the advances; intentionally commingled, misappropriated, and concealed Plaintiffs' funds, resulting in over $22 million in unpaid advances; and now seek to leverage Defendants' web of sham entities to transfer their assets and avoid accountability.  (Compl. ¶¶ 6, 9, 20–21, 24, 98).  Plaintiffs assert claims of fraud; aiding and abetting fraud; conversion; breach of fiduciary duty;

3

aiding and abetting breach of fiduciary duty; unfair trade practices; unjust enrichment; and, alternatively, breach of contract; and seek an independent accounting of all funds received.  (*Id.* ¶¶ 115–92).

On January 16, 2025, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction, seeking to freeze Defendants' assets and prevent them from interfering with an independent audit.  (Pls.' Mem. of Law in Supp. of Mot. for a TRO and Prelim. Inj. dated Jan. 16, 2025, Dkt. No. 10-1 at 1).  In their opposition, Defendants asserted lack of personal jurisdiction as a complete defense.  (Defs.' Mem. of Law in Opp'n to Pls.' Mot. for a TRO and Prelim. Inj. dated Jan. 23, 2025, Dkt. No. 24 at 4–7).  The Court ordered briefing on Defendants' proposed motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(2).  (Order dated Jan. 29, 2025).

## DISCUSSION

The principle that "a district court must generally resolve material factual disputes and establish that it has federal constitutional jurisdiction . . . before deciding a case on the merits . . . applie[s] equally to personal jurisdiction, because '[p]ersonal jurisdiction, too, is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication.'"  *Mones v. Com. Bank of Kuwait, S.A.K.*, 204 F. App'x 988, 989 (2d Cir. 2006) (quoting *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584 (1999)).  "There are two types of personal jurisdiction: general and specific."  *Sonera Holding B.V. v. Çukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014).  "[G]eneral jurisdiction exists only when a corporation's contacts with a state are 'so continuous and systematic as to render it essentially at home in the forum state.'"  *Id.*

4

(quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (citations and alteration omitted).  This occurs when, for example, the defendant is domiciled in the forum state.  *See Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014) ("'[G]eneral' or 'all purpose' jurisdiction . . . permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.*, domicile).").  "'Specific' or 'case-linked' jurisdiction depends on an affiliation between the forum and the underlying controversy (*i.e.,* an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Id.* (quotations and alterations omitted).

"Before a court may exercise personal jurisdiction over a defendant, three requirements must be met: (1) 'the plaintiff's service of process upon the defendant must have been procedurally proper'; (2) 'there must be a statutory basis for personal jurisdiction that renders such service of process effective'; and (3) 'the exercise of personal jurisdiction must comport with constitutional due process principles.'" *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 121 (2d Cir. 2021) (quoting *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327–28 (2d Cir. 2016)).[2]  "A

---

[2] In a diversity action, personal jurisdiction is determined by reference to the law of the state in which the district court sits. *Realuyo v. Abrille*, 93 F. App'x 297, 298 (2d Cir. 2004).  Unlike several other states, "[t]he New York long-arm statute does not extend in all respects to the constitutional limits established by *International Shoe Co. v. Washington*, and its progeny." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60–61 (2d Cir. 2012) (citation omitted); *see Banco Ambrosiano v. Artoc Bank & Tr. Ltd.*, 62 N.Y.2d 65, 71 (1984) ("[I]n setting forth certain categories of bases for long-arm jurisdiction, CPLR 302 does not go as far as is constitutionally permissible.  Thus, a situation can occur in which the necessary contacts to satisfy due process are present, but in personam jurisdiction will not be obtained in this State because the statute does

5

plaintiff must establish the court's jurisdiction with respect to *each* claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

"[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010) (quotations omitted). While courts will construe the pleadings and supporting materials in the light most favorable to the plaintiffs, resolving all doubts in their favor, plaintiffs must make "'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" *Id.* at 35 (quoting *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (alteration omitted)).

Plaintiff Pactolus Income Opportunities is a Delaware limited liability company whose members are citizens of Virginia and Missouri. (Pls.' Rule 7.1 Disclosure Statement dated Feb. 3, 2025, Dkt. No. 41 at 2–3). Plaintiffs Advanced Plus LLC, Advanced Plus Deal 1 LLC, and Advanced Plus Deal 2 LLC are New York limited liability companies whose members are citizens of New York and Michigan. (*Id.* at 1–2). The Corporate Defendants are citizens of Texas and Georgia. (Ridge Administrative Services, Inc. Rule 7.1 Disclosure Statement dated Jan. 23, 2025, Dkt. No. 14; The Health Share Group Inc. Rule 7.1 Disclosure Statement dated Jan. 23, 2025, Dkt. No. 15; Association Health Care Management, Inc. Rule 7.1 Disclosure Statement dated Jan. 23,

---

not authorize it." (citations omitted)). Therefore, courts first consider whether the requirements of New York's long-arm statute have been satisfied before addressing whether the exercise of personal jurisdiction would comport with due process. *Peterson v. Bank Markazi*, 121 F.4th 983, 1002 (2d Cir. 2024).

6

2025, Dkt. No. 16; National Individual Insurance Agency, LLC Rule 7.1 Disclosure Statement dated Jan. 23, 2025, Dkt. No. 17; Blackhawk Claims Service, Inc. Rule 7.1 Disclosure Statement dated Jan. 23, 2025, Dkt. No. 18; Crimson Holding Group, Inc. Rule 7.1 Disclosure Statement dated Jan. 23, 2025, Dkt. No. 19; RFA Group, Inc. Rule 7.1 Disclosure Statement dated Jan. 23, 2025, Dkt. No. 20). The Individual Defendants are citizens of Texas and Florida. (Individual Defs.' Rule 7.1 Disclosure Statement dated Jan. 28, 2025, Dkt. No. 32).

Plaintiffs contend (1) based on their intertwined and overlapping operations, Defendants should together be treated as a single entity for jurisdictional purposes; and (2) personal jurisdiction exists under C.P.L.R. § 302(a)(1) and (a)(3) based upon Defendants' business transactions and tortious conduct targeting New York. (Pls.' Opp'n to Defs.' Mot. to Dismiss dated Feb. 12, 2025 ("Pls.' Br."), Dkt. No. 49-2 at 3, 16–23). Specifically, Plaintiffs assert the following "contacts" confer jurisdiction under both § 302(a)(1) and (a)(3): Defendants' weekly funding requests sent electronically to Plaintiffs from August 2023 to January 2025, (Pls.' Br. at 7–8, 16); Plaintiffs weekly disbursements from their New York bank account to Defendants, transmitted in response to these funding requests, (*id.* at 11, 16); and Defendants' use of funds to finance advance insurance commissions on policies sold in New York, (*id.* at 12, 16). The Court concludes these contacts are insufficient to confer personal jurisdiction over any of the Defendants.[3]

---

[3] Plaintiffs do not allege Defendants are subject to general jurisdiction in New York, and therefore, the Court limits its discussion to whether Defendants are subject to specific jurisdiction pursuant to C.P.L.R. § 302(a)(1) or (a)(3).

7

I.        Personal Jurisdiction is Lacking Under C.P.L.R. § 302(a)(1)

Under C.P.L.R. § 302(a)(1), a court may exercise jurisdiction over a non-domiciliary that "transacts any business within the state or contracts anywhere to supply goods or services in the state."  To find jurisdiction under § 302(a)(1), two elements must be satisfied: (1) the defendant must transact business in New York, and (2) the cause of action must arise from that business transaction.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012).  Courts must consider several factors to determine whether a party has "transacted business," including, as relevant here, "whether the defendant has an on-going contractual relationship with a New York corporation," "whether the contract was negotiated or executed in New York," and whether "the defendant has visited New York" for purposes related to the contract.  *Sunward Elecs.*, 362 F.3d at 22 (citing *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)).  The inquiry is assessed under the totality of circumstances; a single transaction may suffice and the defendant need not be physically present in New York during the subject activity for jurisdiction to exist.  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999).

Plaintiffs contend Defendants "transacted business" because they sent weekly funding requests to Plaintiffs in New York for 77 consecutive weeks; in response to those requests, Plaintiffs directed the disbursement of funds from a New York bank account to Defendants in Texas; and Defendants used these funds to advance insurance commissions for agents on policies sold in New York.  (Pls.' Br. at 17).

8

A. <u>Weekly Funding Requests</u>

The funding requests do not confer jurisdiction under § 302(a)(1). Appearing to be nothing more than invoices sent from various officers of Defendants to various officers of Plaintiffs, the requests contain no communication other than request for payment, and do not reference New York in any way. Plaintiffs also have not alleged that any recipients of the requests were located in New York at the relevant time. (*See* Pls.' Br. at 7–10; Defs.' Reply Mem. of Law in Further Supp. of Mot. to Dismiss dated Feb. 14, 2025 ("Defs.' Reply Br."), Dkt. No. 49-3 at 2). And, though Plaintiffs characterize the requests as "systematic[] conduct[] . . . from August 2023 through January 2025," (Pls.' Br. at 17), they more readily present as payment installments pursuant to the parties' underlying agreement, which was not negotiated or executed in New York (and indeed, Defendants did not at any point travel to New York to meet with Plaintiffs in relation to the contract). (*See* Defs.' Mem. of Law at 16; Decl. of Harold L. Brock, Jr. dated Feb. 5, 2025, attached as Ex. 1 to Defs.' Mem. of Law, Dkt. No. 44-1 ¶ 3 ("On behalf of NIIA . . . I never travelled to New York to meet with Advanced Plus. I communicated with [Advanced Plus's representative] from my office in Texas while he was in Michigan, Illinois, and Florida; he lived in three different states over the period of time I spoke to him."); Compl. ¶¶ 8–9, 65, 67, 75 (identifying underlying agreement as between Defendant NIIA and Plaintiff AP)). The only tie to New York appears to be the inference that because Plaintiffs themselves were citizens of New York at the time of the funding requests, Defendants transacted business in New York. Not so.

9

Courts have consistently held that invoices and receipts sent to plaintiffs in New York "do[] not provide an adequate basis for personal jurisdiction." *C.B.C. Wood Products, Inc. v. LMD Integrated Logistics Servs., Inc.*, 455 F. Supp. 2d 218, 226 (E.D.N.Y. 2006); *see also Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. Sept. 15 2016) ("Plaintiffs have alleged that [the] Foreign Defendants communicated with and transmitted information and funds to and from . . . New York, in connection with their fund administration and/or custodial duties . . . . These communications and payments were incidental consequences of fulfilling a foreign contract and are insufficient to 'project' the Foreign Defendants into New York." (citing *Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.*, 2 F. Supp. 2d 470, 474–75 (S.D.N.Y. 1998) (collecting cases)). Such communications only confer jurisdiction where "the content . . . shows that [the defendant] purposefully sought to establish a substantial ongoing business relationship" with plaintiff in New York, thereby "avail[ing] itself of the privilege of conducting activities within the forum state[.]" *State v. Vayu, Inc.*, 39 N.Y.3d 330, 332, 334 (2023).

Plaintiffs have offered no such proof, alleging only that "Defendants knew that their 'pump and damp' scam would be directed at Plaintiff AP, in [New York]." (*See* Compl. ¶ 42). Absent any indication that Defendants sought to engage the New York market, these allegations are insufficient to confer § 302(a)(1) jurisdiction. *E.g., DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010) ("[W]here a defendant's 'contacts with New York consist of telephone calls, fax transmissions, and correspondence in connection with the negotiation of a contract that has a center of

10

gravity well outside the state,' there is no personal jurisdiction under C.P.L.R. § 302(a)(1)" (quoting *Digital Lab Solutions, LLC v. Stickler*, No. 06-CV-6482, 2007 WL 700821, at *3 (S.D.N.Y. Mar. 7, 2007))) (adopting report and recommendation); *Falow v. Cucci*, No. 00-CV-4754, 2003 WL 22999458, at *4 (S.D.N.Y. Dec. 19, 2003) (collecting cases); *cf. Bank Brussels Lambert*, 171 F.3d at 788 (2d Cir. 1999) ("Although [defendant] communicated with plaintiff in New York by phone, fax and possibly mail, . . . . [i]n none of these communications did [defendant] . . . project itself into New York to participate in any activities localized in the state or to represent the banks during any New York transactions.").

B.  <u>Weekly Bank Disbursements</u>

The bank disbursements themselves are also insufficient to find personal jurisdiction here.  Though a defendant's use of a New York bank account for the purpose of conducting business in the state may satisfy § 302(a)(1), mere transmittal of money through a New York account by a defendant that has been neither sought out or designated by the defendant does not suffice.  *Timothy Coffey Nursery Landscape v. Soave* is instructive.  760 F. App'x 58, 60–61 (2d Cir. 2019).  There, the parties agreed that plaintiffs—a New York resident corporation and its associated individual owner— would finance portions of the foreign defendant's investments through a series of wire transfers from plaintiff's New York bank account to defendants' account in Canada.  *Id.* at 59–60.  With "the only contact defendants allegedly had with New York [being] the use of funds flowing between *plaintiffs'* New York bank account and defendants' Canadian bank account and some communications associated with th[ose] wire

11

transfers," and no visits or other purposeful activity associated with New York by defendants, the district court held—and the Second Circuit affirmed—there was no jurisdiction under § 302(a)(1). *Id.* at 60 (emphasis in original) (noting that the "'essentially adventitious' use of a New York bank account does not establish personal jurisdiction."); *see also Deufrains v. Karcauskas*, No. 12-CV-2576, 2013 WL 4806955, at *12 (E.D.N.Y. Sept. 9, 2013) ("Plaintiff's transfer of money [to Defendants from a New York bank account] is not a New York contact attributable to Defendants for the purpose of finding New York personal jurisdiction.") (adopting report and recommendation; collecting cases); *Hill*, 207 F. Supp. 3d at 339–40 (foreign defendants' communications with and transmission of funds to and from New York were "incidental consequences of fulfilling a foreign contract"—a contract not negotiated in or related to activity in New York—and insufficient to confer jurisdiction under § 302(a)(1) (citing *Roper Starch Worldwide, Inc. v. Reymer Assocs, Inc.*, 2 F. Supp. 2d 470, 474–75 (S.D.N.Y. 1998))).

Here, Plaintiffs assert the disbursements constitute a "business transaction" with New York because, in response to Defendants' funding requests, Plaintiffs sent payment from *their* New York bank account to Defendants in Texas. (Pls.' Br. at 11). Critically, Plaintiffs do not allege that Defendants directed the funds be transferred from, to, or through a New York account; entered a business relationship with Plaintiffs to gain access to a New York account; or otherwise oversaw the flow of funds through New York. (Pls.' Br. at 11–12, 17–18). Had "defendants chose[n] New York" banks to conduct their activity, when "other jurisdictions were available," their New York ties and activity may have been deemed "volitional and not coincidental." *Rushaid v. Pictet*

12

*& Cie*, 28 N.Y. 3d 316, 328 (quotations omitted).  But the opposite is true here: Plaintiffs chose New York accounts, not Defendants.  As in *Timothy Coffey*, the incidental wire transfers from Plaintiffs' account in New York are insufficient to find personal jurisdiction over Defendants under § 302(a)(1).  760 F. App'x at 60–61.

Nor have Plaintiffs shown their claims arise from the bank disbursements, as § 302(a)(1) requires.  *See Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983) ("The foreign defendant's transaction of business in New York must 'bear a substantial relationship to the transaction out of which the instant cause of action arose.'" (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981))).  A claim "aris[es] from a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon."  *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citations and quotations omitted).  A "merely coincidental" connection does not suffice.  *Id.*

Here, Plaintiffs allege fraud and other wrongdoing based upon Defendants' use and management of Plaintiffs' funds, failure to repay Plaintiffs for their investments, and misrepresentations that caused Plaintiffs to enter a business relationship with Defendants—conduct that took place wholly outside of New York.  (Compl. ¶¶ 61–114).  And while Plaintiffs contend their claims stem from Defendants' inducement of AP to disburse funds from New York and Defendants' control over those funds, (Pls.' Br. at 19), the Complaint is devoid of any allegation that Plaintiffs' wiring of funds *through New York* had any bearing on Defendants' conduct, nor do Plaintiffs plead wrongdoing pertaining to Defendants' receipt of the funds from New York.  (Compl. ¶¶ 61–114).

13

For example, the management, misappropriation and misrepresentation are not alleged to have taken place in New York.  Only the initial funding—but not the initial contracting that led to the disbursement—was connected to New York.  And even then, only by the gossamer thread of Plaintiffs' account being located here.  "[T]he payments to [Defendants'] 'could have been made anywhere and it would not have changed the nature of the [P]laintiffs' allegations.'" *DirecTV*, 691 F. Supp. 2d at 424 (quoting *Leema Enters., Inc. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983))).

For example, in *DirecTV*, the plaintiff brought claims for breach of fiduciary duty and fraud regarding an alleged kickback scheme orchestrated by a series of nondomiciliary defendants.  691 F. Supp. 2d at 412–14.  One defendant allegedly operated a New York bank account in furtherance of the scheme.  *Id.* at 414, 419.  Plaintiffs claimed personal jurisdiction under § 302(a)(1) was proper over this defendant because the account was an instrumentality of the conspiracy.  *Id.* at 423.  But the defendant's "mere use of one New York bank account lack[ed] the articulable nexus necessary to establish jurisdiction" because plaintiff's claims arose from individuals acting outside of New York who caused plaintiffs to disburse the funds for defendants' benefit.  *Id.* at 423–24.  "Even if some individuals received kickbacks from cash wired into and out of a bank account at a New York bank," a similar allegation to the present case, the use of a New York bank account was merely "tangential" to the claims.  *See id.* at 424.

Section § 302(a)(1)'s nexus requirement is, therefore, not satisfied.  *E.g.*, *Tam v. MIH CP Sols., LLC*, No. 21-CV-2148, 2022 WL 17415088, at *4 (E.D.N.Y. Dec. 5, 2022)

14

(claims for conversion and unjust enrichment did not arise from defendant's business transactions where plaintiffs did not allege defendant "undertook activity in New York to convert plaintiffs' property or unjustly enrich himself," despite the exchange of funds through a New York account) (citing *Timothy Coffey*, 760 F. App'x at 60).[4]

### C. Sale of Insurance Policies to New York Residents

Lastly, Plaintiffs' contention that Defendants' use of the funds advanced by Plaintiffs to finance insurance commissions on policies sold in New York is utterly devoid of allegations sufficient to confer jurisdiction under § 302(a)(1). For one thing, the Complaint contains no claims related to the sale of such policies. *See Beacon Enters*, 715 F.2d at 764. Indeed, Plaintiffs' causes of action would exist regardless of whether Defendants sold any policies in New York or some other state, since the Complaint centers on Defendants' alleged misrepresentations and misconduct toward Plaintiffs, not toward the insurance agents or policy holders that benefited from the advanced commission stream or the sales of the policies themselves. (Compl. ¶¶ 61–114); *see*

---

[4] The cases cited by Plaintiffs to support a finding of jurisdiction under § 302(a)(1) are inapposite. *Jakob v. JPMorgan Chase Bank, N.A.* addressed jurisdiction over a nondomiciliary defendant whose electronic communications with a New York resident caused the plaintiff to initiate a wire transfer from his New York account. No. 22-CV-3921, 2023 WL 5350814, at *1, *3–*4 (E.D.N.Y. Aug. 19, 2023). Critical to the Court's holding, however, was that the parties' negotiations—though electronic—occurred while the plaintiff was in New York, as did performance of the contract. *Id.* at *3. Such allegations are lacking here. In *Roxx Allison Ltd. v. Jewelers Inc.* the Court found the defendant transacted business in New York based upon its repeated purchase of the plaintiff's products over the course of the parties' four-year business relationship. 385 F. Supp. 3d 377, 382–83 (S.D.N.Y. 2019). But again, the negotiations (done via phone) and purchases took place in New York—by dint of the plaintiff purchaser being in New York and calls being placed into New York. And while some of the Plaintiffs here are New York citizens, there is no allegation that they were in New York or centered their business in New York at the time of the alleged conduct by Defendants.

15

*Lowenstein v. Kane*, No. 08-CV-4730, 2009 WL 10706666, at *3 (E.D.N.Y. Sept. 21, 2009) (finding no § 302(a)(1) jurisdiction where defendant's alleged business activity in New York was unrelated to plaintiff's claims).

Individually and cumulatively, the funding requests, bank disbursements, and insurance sales do not confer personal jurisdiction over Defendants under § 302(a)(1). *E.g.*, *Great Western Ins. Co. v. Graham*, No. 18-CV-6249, 2024 WL 3161747, at *7 (S.D.N.Y. June 25, 2024) ("None of [the factual assertions], either singly or in combination, establishes that [Defendant] 'purposefully avail[ed] [itself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'" (quoting *Fagan v. Republic of Austria*, No. 08-CV-6715, 2011 WL 1197677, at *13 (S.D.N.Y. Mar. 25, 2011))).

II.        Personal Jurisdiction is Lacking Under C.P.L.R. § 302(a)(3)

Pursuant to C.P.L.R. § 302(a)(3), a court may exercise personal jurisdiction over a nondomiciliary defendant who commits a tortious act outside the state, causing injury within the state. "Jurisdiction lies under Section 302(a)(3), only if, in addition to causing the alleged injury, the defendant either: (1) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in New York or (2) expects [or] should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate and international commerce." *Mangia Media Inc. v. Univ. Pipeline Inc.*, 846 F. Supp. 2d 319, 323 (E.D.N.Y. Feb. 28, 2012) (citing C.P.LR. § 302(a)(3)); *Schultz v. Safra Nat. Bank of New York*, 377 F. App'x 101, 103 (2d Cir. 2010) ("[Plaintiff]

16

could not show that [Defendant] regularly and consistently engaged in any business in the State of New York so as to create jurisdiction pursuant to § 302(a)(3).").

Plaintiffs argue they have established jurisdiction under § 302(a)(3) based on the same "contacts" discussed above—the weekly funding request and disbursements. (Pls.' Br. at 19–23). Yet Plaintiffs do not attempt to satisfy either § 302(a)(3)(i) or (ii), simply stating that "Defendants not only engage in regular business transactions within New York but also persistently solicited and conducted activities in New York that are integral to their overall revenue generation." (*Id.* at 23). This bald and conclusory assertion, devoid of any factual allegations or citations to the record, is fatal to Plaintiffs' jurisdictional claim under § 302(a)(3). *See Bowers v. Gupta Televisa, S.A.B.*, No. 23-CV-10870, 2025 WL 579978, at *5 (S.D.N.Y. Feb. 21, 2025) ("Plaintiff's memorandum in opposition asserts in a single conclusory sentence that the Complaint makes a prima facie showing of specific jurisdiction under § 302(a)(3). The lack of any analysis or discussion is tantamount to abandoning this argument." (citing *Lema-Kajuana v. Garland*, No. 20-3096, 2023 WL 126823, at *2 (2d Cir. Jan. 9, 2023))).

## CONCLUSION

For the reasons discussed above, the Court concludes it lacks personal jurisdiction over any of the Defendants. The motion to dismiss is therefore granted, and the Complaint is dismissed without prejudice. The Clerk is directed to close the case.

SO ORDERED.
*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Dated: April 21, 2025
      Central Islip, New York